IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CR. NO. S-97-0381 FCD GGH |
| vs. | |
| BRYAN JAMES EPIS | |
| Defendants. | ORDER |

*Introduction and Summary*[1]

By means of a motion brought pursuant to 28 U.S.C. § 2255, Bryan Epis seeks to vacate his marijuana cultivation convictions and sentences in this somewhat well-known-in-this-

---

[1] The undersigned adjudicates this motion for bail by order. First, 28 U.S.C. § 636(b)(1)B) and (b)(1)(A), as effectuated by the local rules of this court refer, 28 U.S.C. § 2255 motions to the magistrate for all non-dispositive or dispositive matters (dispositive matters performed on findings and recommendations, § 636(b)(1)(b)). Eastern District Local Rule 302(c)(17). Moreover, in the context of this § 2255 motion, a quasi-civil proceeding within a larger criminal action, a motion for bail is clearly "pretrial." A motion to be released on bail is not dispositive of the action. See generally Raddatz v. United States, 447 U.S. 667, 100 S.Ct. 2406 (1980), generally dividing a magistrate judge's jurisdiction into two categories: non-dispositive and dispositive, the former authorizing the magistrate judge's "order" authority, and the latter requiring findings and recommendations. Finally, a magistrate judge's jurisdiction cannot be so obtusely defined as to indisputably permit the magistrate to order detention or release on bail or other conditions in criminal actions, but in a § 2255 motion within a criminal action, deny that authority.

district case.  He does so on several grounds, but primarily on his oft asserted ground of governmental misconduct in the course of the prosecution, i.e., misleading the jury into finding that *this* case involved a conspiracy to grow over 1000 marijuana plants within 1000 feet of a school.  By the present interlocutory motion under submission, he seeks to be released on bail pending the ultimate adjudication of the § 2255 motion.  For the reasons that follow, the court does not find that Epis has shown a high degree of success on his § 2255 motion, nor the special circumstances that must exist for release on bond post-conviction.

*Procedural Background*

Having been involved steadily in a state marijuana prosecution based on 1994 activities, movant ("Epis") was arrested again on such a charge on June 26, 1997.  Although his state (Butte County) charges were still pending, Epis was ordered released on his federal charges a few days later, July 2, on the posting of $500,000 bond, posted approximately one-month later.[2]  This federal case thereupon stalled somewhat on account of changes in the prosecution team, a change in assignment of district judges, and numerous defense motions.

The first indictment was returned in July of 1997, the first superseding indictment in January of 2001, and the second superseding indictment, a year later.  While Count 3 remained stable (cultivation of 100 or more plants within 1000 feet of a school), Count 1 evolved from a non-specified conspiracy to cultivate marijuana, to a 1000 plant or more conspiracy, to finally a 1000 plant or more cultivation conspiracy within 1000 feet of a school. (The great bulk of Epis' current challenge relates to this count and his assertion that the evidence presented by the government on this count related to an unrelated plan to cultivate marijuana in the Silicon Valley.)

////

---

[2] Apparently, after the passage of California's medical marijuana proposition, Butte County gave up on the 1994 charges in lieu of federal prosecution of the 1994 activities. However, the 1994 federal counts were ultimately dismissed after the granting of a motion to suppress with respect to the state warrant related to the 1994 search.

1    Motion after motion was made in this case.  Evidentiary hearings were held.
2 Moreover, at one time in 1998, Epis had purportedly thought about pleading guilty, and even
3 moved to enforce a purported agreement, without ever having pled guilty, but the parties
4 disagreed on the contents of that plea agreement and/or its effective status.  The court refused to
5 enforce this "agreement."  On July 11, 2002, Epis was convicted on Counts 1 and 3 of the second
6 superseding indictment.  Sentencing occurred on October 7, 2002 and Epis received 120 months
7 on each of the two counts to run concurrently.  Epis, who had been out on release was remanded
8 on this date.  Appeal was taken, and on August 6, 2004, the Ninth Circuit remanded the case to
9 the district court on a limited basis pending final resolution of the appeal to consider the effect, if
10 any, on the Supreme Court's then upcoming decision in Raich v. Ashcroft (later Gonzales), 545
11 U.S.1, 125 S.Ct. 2195 (2005), and also re-sentencing in light of Blakely v. Washington, 542 U.S.
12 296, 124 S.Ct. 2531 (2004).  Of note here, the Ninth Circuit also ordered Epis' release pending
13 adjudication of the limited remand.  At this time, counting the initial few days of jail confinement
14 at the inception of the case, Epis had served approximately two years.

15    Protracted proceedings occurred again with respect to the limited remand.  Raich
16 was decided adversely to Epis' assertions on appeal in this case.  On September 14, 2007, Epis
17 was resentenced to 120 months on Count 1 and 87 months (concurrently) on Count 3.  He was
18 not remanded at this time, and his continued release pending appeal was confirmed by Order of
19 October 19, 2007.  The Epis direct review saga came to an end on August 11, 2009 when the
20 Ninth Circuit affirmed the conviction and new sentencing.  Epis was remanded into custody on
21 February 22, 2010, and has remained so up to the present time.  The parties disagree on the
22 precise release date in BOP records (presumably taking into account both Counts), but suffice it
23 to say that only, approximately three and one-half years of the 87 month (7 and one-quarter
24 years) have been served.  Even giving Epis the benefit of speculation that he will receive
25 approximately one year "good time," he would not be released on Count 3, if Count 3 were the
26 only Count in play, until mid 2013, or so.  This fact becomes important in the bail pending

3

1  adjudication of the § 2255 motion issue before the undersigned.

2  *Discussion*

3         The Ninth Circuit has utilized both a conjunctive and disjunctive test for release
4  pending adjudication of a § 2255 motion; the standards involve "special circumstances" and a
5  "high probability of success." See <u>Benson v. California</u>, 328 F.2d 159, 162 (9th Cir. 1964)
6  (something more than a "clear case for release" on the merits of the petition must exist before
7  release on bail appropriate) cited with approval in <u>Aronson v. May</u>, 85 S.Ct. 3 (1964) (Douglas, J
8  in chambers), and <u>United States v. Metts</u>, 41 F.3d 1281, 1282 (9th Cir. 1995) (*either* special
9  circumstances *or* a high probability of success may be grounds for release pending adjudication
10 of a § 2255 motion). See also <u>Vaughn v. Adams</u>, 2006 WL 2585041 *9-10 (E.D. Cal. 2006)
11 discussing the apparent discrepancy in Circuit law. However, the undersigned need not pick
12 which line of authority is most appropriate because petitioner has shown neither special
13 circumstances nor a high probability of success, at least with respect to Count 3.[3]

14        The undersigned has reviewed the entire § 2255 motion in this case. Every issue,
15 save perhaps one or two, is related to conviction on Count 1, and would not impact the
16 conviction on Count 3. Thus, even if Epis could make out a clear case for success on the merits
17 on his issues of governmental misconduct during litigation or ineffective assistance of counsel
18 related to the same misconduct issue (all having to do with the context of exhibits demonstrating
19 the scope of the conspiracy), such would not impact his conviction for Count 3 which involved
20 the actual cultivation of marijuana 100 plants (but less than 1,000) within 1000 feet of a school.

---

[3] If compelled to choose, the undersigned would choose <u>Benson</u>. In the event that there were little, if any, chance that a conviction and sentence would be vacated upon final adjudication of a § 2255 motion, release should not occur simply because some special circumstance existed. Any defendant who had declining health in prison, a family crisis, or a prospectively lengthy § 2255 proceeding would be automatically entitled to release even when ultimately the conviction would be upheld. On the other hand, in a situation where a movant made out a clear case of success on the merits, *and* an entire conviction were at substantial risk, the fact of unwarranted incarceration might be the only special circumstance needed. The *sine qua non* for release pending appeal must take into account the chances for clear success on the merits in addition to any other special factor.

Such a situation where a sentence must be served regardless of the final outcome on the merits of one count is the antithesis of special circumstances indicating that release on bail might be appropriate; it is a circumstance warranting the denial of the motion. Epis' argument that he might prevail on an issue which would result in the vacating of a conviction on *another* count is a *non-sequitur*, at least until such a time where the sentence on the unchallenged count would expire. Given that expiration of the sentence on Count 3 is at least two years in the future, the undersigned will not order release at this time.

Epis does challenge his counsel's failure to accept a plea offer made in 2002, (the Wong proposal-four years incarceration) different and presumably harsher from that which was at issue on the motion for specific performance (the Griffin proposal). Superficially that challenge could affect Count 3 as that Count would have been dismissed upon acceptance of the plea offer and entry of the guilty plea, or Count 3 may have been modified so that a four year plea would have fit the charge. The undersigned is unsure of the precise mechanics of the proposed plea, but the undersigned is not unsure of his belief that petitioner, at this time, has not shown a probability of success on this issue.

Defendants are entitled to the effective assistance of counsel during plea negotiations. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366 (1985). However, a defendant who challenges his counsel's advice with respect to foregoing a plea agreement, must first show that no reasonable, competent counsel would have rendered the advice, or lack thereof. Weaver v. Palmateer, 455 F.3d 958, 965 (n.9) (9th Cir. 2006). In other words: "counsel made errors so serious that counsel was not acting as the 'counsel' guaranteed by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). A defendant must also show prejudice, i.e., that (in the relevant context here) the defendant probably would have taken

////

////

////

5

the plea and not gone to trial.  United States v. Day, 285 F.3d1167, 1172 (9th Cir. 2002).[4]
However, as the Supreme Court has emphasized, courts should not second guess counsel, and
tactical decisions are almost unassailable.  See Strickland, supra.  Misguided projections about
possible sentences are not actionable unless the ultimate result was widely disparate with what
was predicted.  Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986).

        Epis alleges here that his counsel was ineffective because he did not specifically recommend that Epis take the Wong plea proposal.  He declares that his counsel told him that if he received the jury instructions he wanted, the defense would prevail, but that would probably not happen.  Counsel also believed that he had a shot at jury nullification.  He alleges that all counsel at the time were unaware that Epis was ineligible for the safety valve (an argument that was not finally resolved until Epis' adverse appeal).  Epis finally concludes that if advised that he might obtain a 10-year sentence on conviction, he would have taken the deal.  At hearing, Epis posited as "proof" of his willingness to plead guilty (with the right deal),  the motion for specific performance of the previous Griffin deal.

        However, there are significant facts which counter those proposed by Epis, or at the very least raise serious questions.  After all, Epis' counsel told him that he was probably going to lose the case, and this advice turned out to be correct.  Also as reiterated by the government, Epis was a law school graduate himself who must have known that he was facing a mandatory minimum 10-year sentence on Count 1.  Various pleadings in the case refer to that fact.  That Epis' lawyer did not, allegedly, twist his arm to take the Wong deal is hardly the substance of ineffective assistance.  Epis knew what he was facing if convicted, and could make his own decision after being told that he would probably lose the case.  Moreover, on the prejudice issue, as pointed out by government counsel, and as specifically recalled by the

---

[4] "In assessing prejudice, we do not ask what a defendant might have done had he benefitted from clairvoyant counsel. [citations omitted] . . ..  Instead, we consider whether there is a reasonable probability that [the defendant] would have proceeded to trial had he been given proper advice from counsel."  Weaver, 455 F.3d at 966.

undersigned, Epis was so sure and zealous about his medical marijuana defense that he practically "dared" the federal law enforcement to prosecute him. His was going to be the seminal case which brought down the federal laws regarding marijuana. Pleading guilty to any deal was not the likely mindset of this defendant. Moreover, the specific performance motion referenced above was odd in that it was not made by a defendant *who had pled guilty* and was seeking to enforce a deal, but by a defendant *who had never related that he was going to plead guilty*. Thus, the importance of such a motion to establish Epis' mindset at odds with his stated "mission," is questionable. Whether one looks to the competence of counsel's advice, or the state of mind of Epis, there are, at least, large issues of fact to be determined. Moreover, Epis provided no declaration from his counsel. Epis would like the issue determined solely on his say-so– a problem, given the trial court's previous rejection of Epis' credibility.

In sum, while Epis' allegations might require an evidentiary hearing, they are far from the requirement at this stage of a high probability of success.[5]

Neither has Epis demonstrated any special circumstances which would warrant release at this time. Surely, if release would be *presently* warranted if he were to prevail on the merits of Count 1, such might constitute a special circumstance. But as demonstrated above, such is not the case because of the continuing sentence on Count 3. Epis argues that the protracted nature of the case prior to his appeal is a special circumstance, but Epis fails to relate that contention to post-appeal matters, i.e., his present status. His argument only shows that he was not incarcerated for a great deal of time prior to the ruling on his appeal. Finally, Epis argues that his case was a threshold case involving the use of medical marijuana after passage of a California law permitting such. But he pressed that issue on appeal, and the Ninth Circuit was not persuaded.

---

[5] Epis also complains that his counsel was ineffective because he failed to make a <u>Franks</u> challenge to the 1997 warrant. Aside from present *ipse dixit*, there are no facts to show a high probability of success on this issue.

7

*Conclusion*

Given that Epis has at least approximately two years to serve on Count 3, the court need not assess the probability of success on those arguments related to Count 1.  As Epis has neither shown a high probability of success and/or special circumstances with respect to his Count 3 conviction, Epis' motion to be released on bail pending adjudication of his § 2255 motion is denied without prejudice to renewal at the time his Count 3 sentence expires.

Dated: August 10, 2011

                                                /s/ Gregory G. Hollows
                                       UNITED STATES MAGISTRATE JUDGE